The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. You can be seated. Mr. Carpenter, are you ready? May it please the Court. The 16-month sentence that Mr. Catone received in this case is flawed in two respects. First, it exceeds the statutory maximum, which should have been just 12 months under the Apprendi line of cases. And second, as the government concedes, the district court committed a procedural error in calculating the guidelines loss amount. If we turn first to the statutory maximum issue, the Supreme Court last year in the Allain case reaffirmed the Apprendi rule in clear and unambiguous language, saying any fact that by law increases the penalty for an offense is an element that must be submitted to the jury. That rule applies in a straightforward fashion to the text of Section 1920, because that statute provides for an increased statutory maximum from one year to five years, based on the existence of a fact that the offense involved more than $1,000 in falsely obtained benefits. The government's argument that the Apprendi rule shouldn't apply and that this $1,000 threshold should be treated as a sentencing factor, rather than as an element, are based on two circuit court cases, Toupon from the Third Circuit and Weber from the Seventh Circuit. But those cases were decided before the Supreme Court's most recent reaffirmations and clarifications of the Apprendi rule in the Southern Union and Allain cases. So when Toupon and Weber were decided, the Supreme Court's decisions in Harris and McMillan were still on the books, and those cases preserved to some extent a constitutional distinction between sentencing factors and elements. That distinction has now been obliterated by the two most recent Supreme Court decisions. So if you look first at the passage we've quoted from Southern Union from 2012, the Supreme Court says that the Apprendi line of cases uniformly reject the government's assumption that there is a constitutionally significant difference between an element and a sentencing factor. Then in Allain, just last year, the court went even further and reversed Harris and McMillan, entirely eliminating the distinction between sentencing factors and elements for purposes of— So it's your contention that the statute defaults back to the misdemeanor penalty? That's right. Our contention is that the elements charged to the jury in this case prove only the misdemeanor offense. To prove the felony offense, the jury has to be instructed on and has to find the additional $1,000 element. I think in addition to being compelled by the logic of Southern Union and Allain, that construction of the statute is also consistent with this court's decision in United States v. Wilson. It's an older case. It's from 1960, but it deals with a statute that has an identical structure. Just as with section 1920 in this case, section 641 in the Wilson case defined the felony offense in its first clause, along with the felony punishment, then it used a semicolon but if construction to provide that if the offense involved less than $100, that it must be treated as a misdemeanor offense. This court in Wilson held that the $100 in that case threshold was an element of the offense that had to be submitted to the jury. And as a result, it vacated a seven and a half year felony sentence that had been imposed, remanded with instructions that the defendant there be sentenced consistent with the misdemeanor offense to no more than 12 months in prison. The government has offered, in its brief, it didn't even acknowledge that the Wilson case is on the books, and it didn't offer this court any basis on which to distinguish that case's construction of the statute. Our view is that the outcome in Wilson is the same outcome that we should have here. It should be remanded for re-sentencing consistent with a conviction for a misdemeanor offense, which would affect not only the length of incarceration, but also the term of supervised release, as well as the amount of the special assessment that was imposed as a result of the felony conviction. What about restitution in this case? Yes, we believe the restitution award also should be recalculated based on, and that brings us really to the guidelines issue, because under this court's decision in Dawkins, the restitution amount is to be determined as equal to the guidelines loss amount. And under Dawkins, as the government acknowledged in the district court, and again here, the controlling standard is the standard of what would Mr. Catone have received in benefits if he had been truthful in disclosing on the 1032 form filed in April 2008 about the marginal amount of income that he'd received from Angelo's maintenance. We don't really know that, do we, from this record, the exact amount he would have received. We don't know the exact amount he would have received, and that I would point out is the government's burden to establish its loss amount, and they've not carried that burden. I think as we point out in the briefs, the most generous construction for the government gets them only to a loss amount of around $850. We go through that analysis on page 23 of the briefs, and I'm embarrassed to point out that there is a typo in our briefs that I wouldn't call the court's attention. We say there that the total that he received in the two checks in the 15-month period preceding the April 2008 form was $1,135. It was, in fact, $1,125. That is the total of the two checks. One was for $490. The other was for $635. So that total should have been $1,125 rather than $1,135. But otherwise, the analysis that we set out on page 23 of the brief is the analysis that I think is appropriate for loss amount, and drawing some assumptions in favor of the government in terms of what his wage earning capacity might have been, I think it gets the government only to a loss amount of $850. And so for that reason, to take one quick step back to the Apprendi issue, for that reason, we disagree with the government's contention that the evidence on this $1,000 threshold was overwhelming or uncontroverted. Again, as laid out on page 23, we think that in the best-case scenario, the government only gets to around $850. But even if the evidence were overwhelming, I'd point the court, as we did in the briefs, to this court's decision in Mackens, which holds that an Apprendi error of the type here should be found harmless only if the same total sentence of imprisonment could have been imposed based on multiple counts of conviction. Here, we only have the single count of conviction, so his sentence could have only been 12 months. So back to the guidelines issue, the government agrees that we need at least a remand for resentencing in this case to determine, in its view, the loss amount and the restitution amount. Our view is, and so we part ways, though, on whether to remand for an additional fact-finding hearing, so in other words, exactly what this resentencing proceeding should look like. Although it's not entirely clear what the government plans to do with this hearing, our view is that a request for additional fact-finding of any sort is precluded by this court's decision in Parker. Certainly, if the government plans to present additional evidence at the hearing, then that is exactly what Parker prohibited the government from doing. In Parker, the court held that where the government has been given one full and fair opportunity to offer proof in support of an enhancement, it should not be given a second chance to do so on a remand for resentencing. Here, just as in Parker, the government had its full and fair opportunity to present its evidence in favor of the loss amount enhancement that it believes should apply. It acknowledged at Joint Appendix page 343 in its sentencing memorandum exactly what the controlling legal standard was under Dawkins. It had its opportunity both at the trial in this case and then again at the sentencing hearing in this case to present its evidence. Wouldn't you have to have some fact-finding to determine the restitution amount? I think, again, I think as we lay out on page 23, that would be the calculation at the best possible calculation for the government. But I think the government also has the burden to establish the restitution amount, and if the court looks at this record and concludes, as we suggest, that there really is no loss amount proven by a preponderance of the evidence, then I think it should remand for a restitution amount of zero. But in the most favorable case scenario for the government, I think it would be the $850, approximately $850 amount. Can the district judge find that amount with what's in the record now? Yes, I think for the reasons that we lay out at page 23. The government's witnesses all agree that it was not disputed that the loss amount here, that the change in Mr. Katone's benefits would have been determined by application of the Shadrick formula. And the Shadrick formula isn't some kind of mystical trade secret that's hidden within the agency's walls. It's very easily available at 5 U.S.C. 8106 Section A in its most basic form, and then it's fleshed out in more detail both in the CFR and in the agency manual, which we cite at footnote 7 of our briefs. I think it's a simple exercise to take the amount of benefits that he should have disclosed on the April 2008 form and run it through the Shadrick formula. And, again, you get to the approximately $850 figure that we cite at page 23 of the briefs. And, Parker, did the trial judge have the law wrong on how to compute the loss amount? I don't have Parker in front of me. Well, Parker's a case that involved an enhancement not for a loss amount finding but for whether a gun possession offense occurred near a playground. And so based on the facts presented, the court found that it was a playground. This court reviewed the evidence in the record and determined that there wasn't sufficient evidence to know whether it was a playground. In other words, the government hadn't carried its burden of proof on that. In this case, the district judge, if we agree with your argument, has the method of computing the loss amount wrong as to what you look at and what evidence is required and what the test is. And so I've got a concern that we're tying his hands, perhaps improperly if we exceed your suggestion, and say no more evidence when he, in effect, agreed with the government, says here's how you figure it, I don't want any more. Well, the only thing I would disagree with there, I think, is that the government acknowledged what the controlling standard was here. They acknowledged that Dawkins controlled in how it should be calculated. So the district court had the opportunity to calculate the facts under the Dawkins formula. And so it's a little bit unclear, based on the lack of factual findings, whether the district court simply overlooked the government's articulation of the standard or whether he made an erroneous finding of fact. So what we suggest, and I think it's consistent with Parker and it's consistent with the D.C. Circuit case, and I think it's Lorenzo that followed the Parker decision, and it followed Parker with respect to a loss amount determination, is to say that if you look at the evidence in the record, the government hasn't carried its burden to prove by a preponderance that there was any loss here and therefore to remand with instructions that the guidelines range be determined based on a loss amount less than $5,000, which is the threshold in Section 2B1.1. I also note the government, in its briefs for the first time, has asserted some kind of joint income theory under which it suggests that you might be able to get over the $5,000 threshold. But even if that were the case, the government actually needs to get all the way up to the $10,000 threshold in order to change the bottom line guidelines range in this case. So even if a two-level enhancement applied to raise the offense level from six to eight, the end of the day, the guidelines range would still be zero to six months. And so based on that, we think that there is no reason for a remand here for additional fact finding. I would point the Court to two particular facts in this case that I think show why there is no loss amount proven on the record. The first is, well, three facts. The first is, as the government's own witnesses acknowledged, the Shadrach formula would have been applied here if this information had been disclosed. And so that really undermines the notion that he would have received no benefits. So the government's theory is, if he discloses this in April 2008, the agency terminates his benefits going forward and, in addition, completely rescinds his benefits that he had received up until April 2008. The two pieces of evidence that Mr. Catone, that we have introduced at the sentencing hearing, that undermine that claim are at Joint Appendix 295, which is the CA-7 form that he submitted in March 2007 that did disclose some income received from Angelo's maintenance. Based on that information, if the government's hypothetical were correct, the agency should have, at that point, determined that he was ineligible for benefits and not paid him. Instead, that form was submitted at the exact same time the agency was calculating the amount of benefits he was entitled to receive. And it factored that into the formula, and then in April of 2007, one month after this form was submitted, the agency began making the benefits payments. So that form undermines the government's theory as to loss. So does the appeals board, the agency appeals board decision at Joint Appendix 311 to 316, which was issued in December of 2012 and which shows that even after the agency knew about the work that he'd allegedly performed and about the income he'd allegedly received, it didn't, even at that point, meet its burden to terminate his benefits going forward. And so the agency appeals board reinstated his benefits effective September 2009. Thank you. Thank you, Mr. Carpenter. Mr. Miller? May it please the court, my name is William Miller here on behalf of the United States. Based on the plain meaning of the statute, the district court properly held that Section 1920 establishes a felony offense punishable by up to five years in prison. And therefore, although a remand is necessary to allow the district court to calculate the guidelines loss amount using the correct standard, this court should affirm the district court's holding regarding the applicable statutory maximum. Now the government's argument regarding the applicable statutory maximum in this case derives from the plain meaning of Section 1920. The plain meaning of that statute, by reference to the language and structure, confirms that it establishes a felony offense with a misdemeanor exception. If you look at the language of that statute, the first clause defines the felony offense. It says that whoever knowingly and willfully makes a false statement in connection with the application for or receipt of federal benefits shall be guilty of perjury and on conviction thereof shall be punished by imprisonment for not more than five years. That is a complete definition of the felony offense. There's then a semicolon separated by the phrase, but if the amount of the benefits falsely obtained does not exceed $1,000, such person shall be punished by imprisonment for not more than one year. And as the courts that have interpreted this language have found, that first clause creates a felony offense. It is a complete thought and stands on its own grammatical feet. The misdemeanor section that comes second is set off pointedly by the phrase, but if, which is the language of an exception. And so as the Third Circuit has observed, what section 1920 does is define a felony offense with a limited misdemeanor exception and falls into the class of statutes that are, quote, felony criminal statutes that include a narrow misdemeanor exception in the event that the illegal conduct results in a de minimis gain. And this interpretation is not undermined by anything that the Supreme Court held in Alain. Alain talks in terms of separate aggravated offenses. What we have here, rather than a misdemeanor with a separate aggregated felony offense, is the recognition that lesser punishment is appropriate in cases where the benefits falsely obtained results in de minimis gain to the defendant. And so it's not an aggravated offense. It's an exception for de minimis gain. Even if this court were to adopt the defendant's interpretation, however, instructions in, errors in jury instructions are subject to harmless error review. That's been established by the Supreme Court in its Nader decision. And in this case, the defendant's argument that the error is not harmless misinterprets the statute. He argues that the error is not harmless because there's a conflict about the amount of benefits falsely obtained. But that focus on the falsely obtained language exclusively ignores the broader context of the statute. What courts have held for statutory purposes is that that benefit falsely obtained is what is in connection with the false statements. And so there, this analysis that we've been discussing for the guidelines purposes about offsetting the loss amount based on what the defendant would have received had he truthfully disclosed his outside employment doesn't apply in the statutory context. In the statutory context, the question is, what benefits did the defendant receive in connection with his false statements? Well, why doesn't it mean what benefit would he have received, what benefit he received that he would not have received had he made a false statement? Isn't that the obvious implication of the statute? That's the defendant's reading, certainly. And why isn't that the most reasonable construction? Because why would the law want to punish you for what you had a right to anyway but for your statement? It's not the most reasonable construction because it overlooks the in-connection with language that comes in the preceding clause. As the Third Circuit... Right, but I'm talking about logic and rational, you know, not trying to hook onto a word here and there. Why would the law seek to punish you for what you had a right to anyway, irrespective of your false statement? And that, Judge Keenan, that certainly is the special rule that applies and the government concedes in the guidelines context when calculating the guidelines range. But the government's position is consistent with the Third Circuit's reading of the statute. Right, but I'm not asking you about the Third Circuit. I'm asking you about the reasoning behind this. What's the reason why a statute would seek to punish somebody for that which the person would have a right to, irrespective of the false statement? What's the logic behind that? And the logic there is going back to what I said earlier about this misdemeanor being an exception for de minimis gain. I understand the court's perspective or your argument there on... I'm just concerned. It just seems counterintuitive, what you're arguing. Correct, correct. Our argument is focused on the language and structure of the statute and the Third Circuit's position on this language of in connection with. The language and structure of the statute doesn't require this extra level of analysis at that stage. That level of analysis comes in in the guidelines calculation based on the special rule for loss calculation at that time. It just seems to me, though, what I don't understand, just going back to if there's a difference between a grand larceny and a petty larceny, the government's got to prove it. You've got to prove what was taken. Why wouldn't you have to prove the amount that was falsely received? Falsely obtained. The government's best argument on that position is that what this does is define an exception for the least culpable defendants. Contrary to Elaine... I don't get the concept of an exception in a statute. You're talking about elements of a crime and what has to be proved. Where in the criminal jurisprudence do we have this concept of an exception that gives the government a pass on proving the amount involved? Courts interpreting this particular statute have found there to be an exception, and so that's the basis. Right, but I'm just asking you, where does this come from? Sentencing factors are commonplace in federal criminal law. I mean, it's not uncommon for a defendant to have the burden for certain things that impact the sentence. The issue is just whether or not this particular statute defines elements of the offense.  I thought Elaine just slammed the door on your argument. Tell me why it doesn't. Elaine speaks in terms of aggravated offenses. Separate aggravated offenses is the language of Elaine. And here, rather than a separate aggravated offense, what we have is, and I'm going back and repeating myself, an exception for, as the Third Circuit has said, de minimis gain to the defendant. Okay, so if this isn't an exception, then you lose. Is that correct? No, Your Honor. We still have the harmless error analysis in this case. And here, going with the in connection with theory for interpreting this particular statute for statutory purposes, it's obvious that this defendant was receiving $3,000 a month in connection with his false statement in the 1032 form. And so the evidence on that point, if the court accepts the government's construction of in connection with, is overwhelming and largely uncontroverted. The defendant's harmless error analysis depends on this court accepting his construction of the statute, which focuses exclusively on falsely obtained language. And as the Third Circuit noted upon, no court has accepted that particular interpretation of the statute. The defendant cites the Eleventh Circuit case in Hearn. But in Hearn, the Eleventh Circuit actually rejected a higher causation requirement, the higher causation requirement that the defendant put forward, and said that all that's required essentially endorsed the district court's instruction, which is that the benefits falsely obtained just had to be as a result of the false statement. And so as the Third Circuit viewed that holding, that was synonymous with the in connection with language. Well, how do you square the Third and Seventh Circuit's interpretation of 1920 with our decision in Wilson which held that Section 641 requires the government to prove the specific loss amount beyond reasonable doubt? And Wilson was a case, as the court is aware, that predated Apprendi by 40 years. And it didn't undertake this. That was also a — It's actually very — it makes our position with Apprendi very colorful, doesn't it? The reason that Wilson is not helpful in this case is that it doesn't undertake this analysis of what is an element of offense. The analysis in Wilson was basically whether or not there was sufficient evidence. And so it didn't go through this sort of Sixth Amendment analysis that the court is required to undertake. In this case. And so Wilson is less helpful than the persuasive authority from other circuits that have undertaken that particular analysis. Moving to the guidelines calculation issue here, the defendant urges this court to remand and confine the government essentially to the record evidence and to direct findings by the district court. And that's not appropriate in this case because the general rule, as reflected in the Dawkins decision where this exact same type of error in the legal standard arose, the general rule is to remand to allow the district court to make those kinds of factual findings because it's better suited to do that. The instances — Can the district court take other evidence under your theory? Yes. Under the general rule, a remand for additional evidence would be appropriate because what happened here is the district court applied the wrong legal standard. When courts confine the district court, that's when the government failed to meet its burden of proof. So it's a different type of error. Well, why couldn't you direct the district court to impose the correct legal standard based on the evidence before it? I mean, isn't that — I mean, don't you have a two bites at the apple problem? No. Why not? The misapplication of the legal standard obviated the need for the factual finding in this case. And so Parker, the case that the defendant cites there, it was actually a statutory case initially, but what happened was there was no misunderstanding about the legal standard. The government just failed to prove that the drugs was dealt near a playground. Here, the court misapplied the legal standard, and so the relevant factual findings weren't made. I mean, perhaps the government could have made an offer of proof that might have been best practices, but it's not required for a remand for the court to make those types of findings. And I draw the court's attention to a Ninth Circuit case. It wasn't cited in my brief. This is in response to something the defendant brought up in his reply. This is United States v. Matthews, and it's at 279 F. 3rd. 880. That's a 2002 en banc decision where the Ninth Circuit goes through this analysis and distinguishes between cases where the government failed to meet its burden, where that was the error, and cases where the district court applied the wrong legal standard. And it actually distinguishes Parker and other cases like it where the error was of a different character. And I'd also just briefly point out that the defendant's loss calculation Let me interrupt you just a second, Mr. Miller. How was it determined what the test was going to be? Is this a theory that's advanced by the government in sentencing, or is this information or a standard established by the judge before you even begin your testimony? In other words, is the judge buying your argument and going that way, or is this his idea independently of any suggestion by the government? If I understand Your Honor's question correctly, the loss calculation in this case is the function of a special rule within the guidelines, and so that sets the standard. It's not a suggestion of the government. It's not a suggestion of the defendant. It's not the court's own determination. It's provided for in the guidelines. Ordinarily, the loss amount is the greater of the intended or actual loss, but when you're dealing with government benefits, there's a special rule that requires this offset based on what the defendant would have received had he been truthful. And so it's a function of the guidelines and as interpreted in this decision in Dawkins. And so the government highlighted the correct standard in its sentencing memorandum, but the error came here when the district court adopted probation's articulation of the standard. The pre-sentence report said loss amount equals what he got and what the forfeiture order was. And the court, when it made its rulings on the objection, said probation is correct on the law essentially. And so that's where the error in the legal standard comes in in this case. It's a function of the district court adopting probation's misstatement of the law, and the law being that which comes from the guidelines and from this court's decision in Dawkins. I don't know if that answers the question. And as for the defendant's guidelines loss calculation, he points to three pieces of evidence. And again, the government's position is that it's premature for this court to engage in this type of fact-finding at this stage. Mr. Carpenter referred to the defendant's joint income theory. That was not a theory that the government is urging upon this court. The purpose of putting that in the brief was simply to point out that the type of fact-finding that the defendant asked this court to engage in is premature at this stage. Under the standard, the court needs to find what was the defendant's wage-earning capacity. And equating his wage-earning capacity to those handful of checks is a flawed analysis in this case. And the pieces of evidence that the defendant relies on are not unreliable. They don't foreclose different findings at the district court. The appeals board decision that the defendant cites, all that found was that when the workers' compensation, OWCP, when it terminated this defendant's benefits, the doctor that it relied on didn't meet the standard. Its report was equivocal. And so it wasn't a finding that the defendant was entitled to these benefits. It was simply a finding that the government hadn't met its burden for termination. And so that's just an example of why fact-finding at this stage is inappropriate and why the district court is in a better position to sort through those types of matters. And I note that in the defendant's opening brief, there was a Brady allegation. My sense is that that has since been abandoned by the defendant. And unless the court has any questions on that particular issue, I'd yield the balance of my time and ask this court to affirm the finding of the statutory maximum and remand to allow the district court to make the appropriate findings under the guidelines. Thank you, Mr. Miller. Mr. Carpenter, you have some time remaining. I want to start very briefly with the Brady claim that Mr. Miller just mentioned. It's not a claim that's been abandoned. I think it's fully covered in the briefs. But I'm certainly happy to answer questions about it if the court has them. Otherwise, we'd be happy to rest on what is in the briefs on that issue. Then I would turn to a question that you asked, Judge Traxler, about how the legal standard was set by the district court. The government's response is, well, the district court deferred to the articulation of the legal standards set out by the probation officer. It's not really 100% accurate because the probation officer doesn't set out a legal standard. In fact, if you look at the PSR Joint Appendix, page 325, in calculating the loss amount, the probation officer refers to section 2B1.1B1F of the guidelines. That's the loss amount provision. It's where the commentary comes in that says we calculate loss amount based on this differential analysis between what he did receive and what he would have received if he'd been truthful. So it cites to the right provision. The government cites to the right provision. That's the distinction we have with Dawkins where this court did remand for additional sentencing. In Dawkins, the government's argument throughout was based on a legal position that under the guidelines, the loss amount should be equated to the forfeiture amount imposed in administrative proceeding. The court rejected that in Dawkins, and it's now been rejected since then by the guidelines commentary as well. There's never been any dispute about what the legal standard is in this case. To the extent that the district court wasn't clear in articulating what standard he was applying, that might be a problem, a procedural problem, but the government was never advancing some legal theory that would have obviated the need for it to produce evidence in order to support the loss amount enhancement that it sought to apply. The government had that opportunity, both through the evidence that was elicited at trial. It could have pointed to that at sentencing. It could have pointed to that evidence in its appeals brief if there were any evidence in there that supported its loss amount theory. Let's go to you, Brady, just briefly since the government didn't argue. Sure. That form CA-7 was prepared by your client. Yes. And he obviously is charged with knowledge as to what he put in it. It was also readily available from the agency if you just asked for it. So how is that a Brady violation? Well, Your Honor, our position on that would be that there shouldn't be, in the context of a Brady claim, a due diligence requirement placed upon defendants to go out and seek this information. Don't we require that often? Well, Your Honor, I think there is some stray language in some of the court's previous cases that deal with that issue and seem to impose a due diligence requirement. I would point the court, and this is a case that I probably should have cited in the reply brief and I apologize for not citing it, the Sixth Circus decision in United States v. Tavera, it's at 719F3705, the decision last year. In that case, the court rejects an argument that the detendant must exercise due diligence to bring a Brady claim and it reasons that requiring due diligence on the part of a defendant, quote, relieves the government of its Brady obligations. So if the point of Brady is for the government to provide the information it has in its files, but the government can get out of that by saying, well, you could have went out and investigated and found this stuff all yourself, that really takes away the point of Brady in the first instance, which is to ensure fair play on the part of the government by requiring it to turn over. I didn't know that the government was going to rely on the CA-7 in the prosecution of your client. Well, that's the thing. They didn't rely on the CA-7, and to the extent they were even aware, it's unclear from the record, and it doesn't matter for the purpose of the Brady claim, whether the prosecutor himself was aware of this form or not. But as we point out in our brief, the CA-7 form absolutely undermined the theory of intent that the government advanced. Their theory was Mr. Catone all along had planned to do this work for Angela's maintenance. He had planned to not disclose it so that he could double dip, so that he could receive more benefits than he was entitled to and also work on the side. The fact that he disclosed this information to the agency in March 2007, when the agency was in the midst of calculating whether he was entitled to benefits and how much he was entitled to, absolutely undermines the theory that there's some kind of nefarious intent that pervaded his actions throughout this time period. If it had been disclosed and if it had been introduced at trial, it could have absolutely supported the defense argument that the omission of this information in April 2008 was mere inadvertence and wasn't knowing and willful. So that's the reason that we think it could have been used at trial had it been disclosed timely by the government in connection with its Brady obligations. If the court has no other questions, I would thank you for your time. Thank you. We'll come down and re-counsel and then go into the next case.
judges: William B. Traxler, Jr., Barbara Milano Keenan, Henry F. Floyd